Good morning, your honor, and may it please the court. I would also like to reserve two minutes. You need to stay close to your mic or something because you're fading in and out. In consistent with Judge Paius's caveat, I will not go into the facts at this moment. Can you hear me better? I think so. The issue in this case is really a single issue, a single error, and that is that the immigration judge found and the BIA affirmed that Mr. Quijano had not demonstrated that the El persecution by the Mara 18 gang. The immigration judge said there was no evidence of the overall inability to control the gang. That is contrary to the record. Mr. Quijano testified about how his brother was shot in order to pursue an abortion. His father, the shooter, Damon, was imprisoned for a short year and some months. During that time, the gang continued to threaten Mr. Quijano and his family. As soon as Damon was out of custody, he shot Mr. Quijano. Mr. Quijano reported to the police. The gang told Mr. Quijano if he pursued that, they would kill him. This is not an ability to protect someone. This is not an efficient effort to protect someone, which is what this court has said in Madrigal and Madrigal that that is the standard. Efficacy is the standard. Beyond that matter, Mr. Quijano Serrano also submitted significant country evidence of the government's continued inability to protect its citizens against gang violence. He also submitted significant local evidence of the gang violence, the uncontrolled gang violence in his municipality of Apapas, seven murders and multiple shootings. The immigration judge did not discuss either of the latter of those two. And that is enough in itself to require a remand. The BIA mentioned only three factors. It mentioned that the police had imprisoned Mr. Damon. And as we noted, that is certainly not evidence of any ability to control violence. And mentioned that the police responded to Mr. Quijano's filing of a complaint. That shows a willingness to help, but it does not show by any means any success. Finally, they note that Mr. Quijano did not further pursue the complaint against Damon shooting Mr. Quijano after he was recognized. But this court has been clear that the failure to report a case is not a demonstration of the ability of the government when the failure is against a person's life. In short, there is no evidence on the government side, and extensive evidence on Mr. Quijano Serrano's side. As a result, I believe this court has found that the El Salvadoran government was unable to protect Mr. Quijano Serrano from the actions of the Mara 18 gang. I will reserve the remainder of my time, Your Honor. Okay, that's fine. You can do that. We'll hear from the government. Thank you, Your Honor. May it please the court. Karen Melnick for the United States. Respondent would argue that the record does not compel the conclusion that the Salvadoran government is unwilling or unable to protect the petitioner. And the way that counsel or petitioner has sort of, one would suggest sort of hermetically seal certain facts going to just unable or just unwilling is not how this court has decided this issue historically. And that the same facts that go to a willingness to take action once a report has been made, demonstrates an ability. And we're not talking about, you know, we're saying an ability to control. We're not talking about absolute control, because obviously, that's unrealistic. But what are the institutions that are supposed to be at work here? For example, does the police take a report? Or do they tell you to go away? We're not going to help you? Do they take a report and then throw it in the garbage? Let me ask you this. Doesn't our case law suggest that, you know, that they can take a report, but don't you have to show some efficacy, you know, that there's some meaning to it? Absolutely. The case law does say that, doesn't it? Well, they're right. And in this case, you have that efficacy, you have it demonstrated by petitioner's brother's case, where they investigated, arrested, prosecuted and incarcerated, perhaps not as long as one would hope, but all those institutions along the way. How can you argue that that's effective? How can you argue that's effective when it did not in any way abate the violence? It persisted. There was no gap. Well, I would argue that with respect to the perpetrator, the one who got arrested in her time, obviously, it abated with respect to him. Now, there's no evidence that after the threats or assault on the house or whatnot, that those were reported to authorities. And no, I'm not suggesting that, as this court has said, that reporting is a but-for analysis with respect to ability, but you have to look at the total picture. And this court has always done that. The court has always looked to, what did the court, what did the, pardon me, what did the authorities do? And the cases I cited from the various panels of this court, albeit unpublished, are instructive because, just for example, in, give me one moment here. For instance, in Lopez Garcia, it's talking about ability, which is what is petitioner's full argument. And it found that the El Salvadoran government was not unwilling or not unable because the evidence was that he sought assistance from the government. His assailant was arrested, prosecuted, and imprisoned. So you have to look at that, plus country conditions evidence writ large, local evidence. And again, I would counter what petitioner's saying with respect to that violence. I don't have Lopez in front of me, and I don't know what the facts are, but were they like these facts, that the violence continued and accelerated as soon as the person got out of prison? And then there was a threat that the petitioner would be killed if he persisted with the prosecution. Are those similar facts in Lopez? Because you're saying they're not, these two-pronged tests are not hermetically sealed, that evidence would apply to both, but they are discrete questions, aren't they? Ability and willingness, aren't they the institutions do? Are they completely ineffective? Did they just throw up their hands and say, we're overrun, we can't handle this, and just do nothing? Or are they taking concrete steps? Are they doing the things that, frankly, we expect the institutions of this country to do? Do they investigate? Do they arrest, et cetera? Did the assailant serve time? I don't think you can, yes, they're separate questions. However, you have to look at them, you can't look at them in complete isolation. And that's why it's important and instructive to look at what did these institutions do with respect to his older brother or brother, and what were they actually beginning to do in his case? They came to the hospital and went right to the source to investigate what happened to him, and they made an arrest with respect to his assailant. The reason why the process stopped is because he elected not to pursue. He didn't report the subsequent threats that were made. We don't know what would have happened. He didn't request protection, he just withdrew from the investigation. And then to say, well, then the El Salvadoran government's unable and unwilling, or at least unable. Well, do we know that? The record doesn't compel it. And I'd like to just briefly address, oh, yeah, sorry. Council refers the court to both localized and violence sort of writ large in the country. And if your honors look to the administrative record where he cites to, and I'm looking at AR 194, 197, 199, 201, 220, 222, 224, and it's in council's reply brief. You know, five out of those seven articles either don't support the point he's trying to make or actually support the government's point. For instance, at 194, there's violence between the gangs. Now there are bystander civilians that are not targeted that are injured, but they aren't targeted. You have 197 where a mini bus driver was shot. There's no evidence. It's just a brief article. It doesn't say anything about being gang related. Pointedly on page 199 of the administrative record, you have a gang member being shot by the police after the gang member shot at the police first when the police were undertaking a preventative patrol in the sector. So, and again, going to page 222, you have three gang member killed. And lastly, 224, there is two sisters who were harmed, were murdered by gang members, and within hours of the incident, they had suspects under arrest. So I make, I go through those because, you know, going back to sort of an ability versus absolute control. Do they have absolute control? No. And if your honors, you know, I think the evidence, the respondents submitted the evidence is not there for the petitioner in terms of country conditions evidence. But even if the court found the evidence in equal poise, its respondents' burden to show that they're in government. Can I ask you a minor side question? Sure. Not really side, but we have a recent opinion. They are? Yes. Do you think that that sheds any light on the issues we're discussing? Yes, your honor. In fact, I did submit a 28-J for that. I couldn't print it out, so I don't have it in front of me. But, you know, I read it. I didn't think that it really helped your argument. Well, I think what the court really focused, at least the majority focused in that case, was that the government offered this and gave protection to the petitioner and then took it away. They mentioned that at least three or four times, the majority did, and said that petitioner wouldn't have a viable case if they had kept that protection. So, you know, here it's, I did a 28-J to distinguish it. The kinds of things that the authorities in that case did in terms of investigate, arrest, prosecute, again, the same things that were done in this case. So, it's very similar, sort of, factually in that way. I don't certainly think it hurts the respondent's position because protection... It kind of helps the petitioner's position, though. Well, it's, I mean, respectfully, I disagree just in the sense that I think it can be somewhat limited to its facts. I mean, I think the court majority was very disturbed by this saying, you know, the authority said, you're on your own. And I think they were, you know, did show that decision went on unwillingness rather than unable, which is what petitioner here is arguing. He's already unable. And the kinds of things that the authorities did in that case are the same that were done here. So, you know, I don't know what more, you know, these are the same things that, frankly, what is done in this country. I mean, and I don't think you would argue that, you know, our institutions are unwilling or unable to help people. So, I don't have a clock on my screen. I don't know where I am at, but I would... I'll let you go over it. That's okay. I appreciate your response to the question. So, I think petitioner has a little bit of time left for rebuttal. Your Honor, I hope you can hear me. Just briefly, I think this court has made very clear that unwillingness and inability are two separate issues and has particularly, starting with Madrigal, found error when BIA did not analyze ability. Second, although the Attorney General talks about the inadequacies of the local conditions evidence that we submitted, although I don't agree with her, it's important the board never analyzed that evidence and never even discussed it, even though it was critical evidence in the case, not alone. And finally, on JR, I believe that the court noted that prior to the protection program, the government had been unable to protect the petitioner. Only during the program terminated, they decided, well, they're certainly unwilling, but they didn't even analyze. It's very clear they didn't analyze whether they thought the government was evil after that. So, I really think that, other than the fact that I think we, our case includes the kind of compelling evidence that Judge Rawlinson found lacking in JR, I don't think JR can fit into the question. Okay. Okay. I also submitted a response to the 28-J motion, but it was this morning. I do not know. I'll be sure to take a look at it, or we'll be sure to take a look at it. Don't worry. Okay. Anything else? I don't see anything else. Okay. Thank you, counsel. Both of you very much. We appreciate your arguments and the matter submitted at this time.
judges: Paez, Rawlinson, Antoon